UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FAHD ABDULLAH AHMED GHAZY, *et al.*, )<br>)<br>Petitioners, )<br>)<br>v. )<br>)<br>GEORGE W. BUSH, President of the )<br>United States, *et al.*, )<br>)<br>Respondents. )<br>) | 05-CV-2223 (RJL) |

## PETITIONERS' OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS IMPROPER RESPONDENTS

Petitioners Fahd Abdullah Ahmed Ghazy, Abdallah Yahya Youssef Allsshaballi, Moath Hamza Ahmed Al Alwi, and Mohammed Ali Hussain Khanina, through their attorneys, oppose Respondents' Motion to Dismiss Improper Respondents. The Government has moved the Court to dismiss all Respondents except for the Secretary of Defense. However, the general rule is that habeas cases must name the petitioner's immediate custodian, usually the warden of the prison where the petitioner is confined. The Government cites an exception to this "immediate custodian" rule for cases involving extraterritorial detentions, but given the holdings in *Boumediene v. Bush*, 128 S.Ct. 2229 (2008), and *Rasul v. Bush*, 542 U.S. 466 (2004), it is unclear that the exception applies in this case. Uncertainty regarding application of this rule to the Guantánamo Bay Naval Station and the risk of a potential transfer of Petitioners outside the reach of the Department of Defense create a unique situation that warrants retaining all named Respondents. For reasons set forth below, the Court should deny the Government's motion.

## ARGUMENT

### I. Commanding Officers At The Detention Facility at Guantánamo Bay, Cuba, Are Proper Respondents

The federal habeas statute provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."). These provisions form the basis for the "immediate custodian" rule, as they "contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)). In accordance with this rule, Petitioners named the two military officials who were determined to be his immediate custodians: the Commanders of Joint Task Force-GTMO and of the Joint Detention Operations Group, respectively. The Government confirms this, acknowledging that "those within the chain of command between petitioners' immediate custodian at Guantánamo Bay, Cuba and the Secretary of Defense either have 'custody' or 'legal control' over petitioners." Gov't Mot. at 6.

The Government argues that the only proper respondent is the Secretary of Defense, but cites no dispositive case law to that effect. Gov't Mot. at 5–6. In attempting to make this point, the Government first cites *al-Marri v. Rumsfeld*, but that case held, contrary to the Government's position, that "for an inmate of a brig, jail, or prison the 'custodian' is the person in charge of that institution," which "[i]n the federal system, . . . means the warden (or Commander) rather than . . . the Secretary of Defense." 360 F.3d 707, 708–09 (7th Cir. 2004). The Government also cites *Padilla*, where the Court rejected the petitioner's "legal reality of control" argument (which appears strikingly similar to the Government's argument here that only Mr. Gates has "legal

2

control"). *Padilla*, 542 U.S. at 434–35. The Court in *Padilla* concluded that Secretary Rumsfeld, although he exercised the "legal reality of control" was not a proper Respondent. *Id.* at 439. Thus, under *Padilla*, Petitioners must, at a minimum, name their immediate physical custodians or risk dismissal of their Petitions.

The Government also cites to footnote 9 in *Padilla*, which states only that there is an "exception to the immediate custodian rule in the military context where an American citizen is detained outside the territorial jurisdiction of any district court." *Id.* at 436 n.9 (quoting *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 498 (1973)). That exception seems to be inapplicable because the United States Supreme Court has held that the U.S. detention facility at Guantánamo Bay, Cuba, is not outside the territorial jurisdiction of this Court. *See Boumediene v. Bush*, 128 S.Ct. 2229, 2261 (2008) ("In every practical sense Guantanamo is not abroad; it is within the constant jurisdiction of the United States."); *Rasul v. Bush*, 542 U.S. 466, 480 (2004) (same).[1] Given Justice Kennedy's controlling concurrence in *Padilla*, there may be an additional exception to the "immediate custodian" rule where a petitioner seeks to file a petition against someone other than the immediate custodian and the Government waives objection to such a filing. *Padilla*, 542 U.S. at 451–52. Such a situation does not exist here.[2]

---

[1] Where the exception outlined in *Padilla* does apply, it is unclear who should be named as respondents in lieu of the immediate custodian. Prior cases suggest that where a petitioner and his immediate custodian are outside the jurisdiction of any district court, "the petitioner may name as respondents any of his custodians (not just the immediate custodians) and may file the claim in the court that has jurisdiction over those respondents." *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 44 (D.D.C. 2004). If the *Padilla* exception were to apply here, Petitioners could indeed name any of their custodians. Therefore, Petitioners have named the President and the Secretary of Defense as respondents given this ambiguity.

[2] Petitioner's objection to the dismissal of these Respondents rests heavily on the ambiguity of the law and of the Government's purpose in filing this motion. Petitioner is concerned that the motion would have substantive effects not properly considered in the Government's motion. The Petition in this case contains many claims for relief other than habeas, including claims for declaratory relief. Whether those claims are cognizable, and whether any or all of the existing Respondents are necessary for relief under those claims, are issues the Government has not addressed. If the Government is willing to waive any

The Government's final argument, that the "other respondents named within the chain of command are superfluous and should be dismissed," Gov't Mot. at 6, is similarly made without any authority. Instead, the Government makes a strained analogy to the Detainee Treatment Act ("DTA"). *See id.* (citing Pub. L. 109-163, Div. A, Title XIV, § 1405(e)(4), 119 Stat. 3136 (Jan. 6, 2006)). As the Supreme Court found in *Boumediene*, the review of CSRT determinations by the Court of Appeals under the DTA is a very different procedure from habeas corpus in the district court, and it would therefore make little sense to follow "Congress's judgment in the DTA context," Gov't Mot. at 6, especially when other federal statutes—sections 2242 and 2243—already provide that the proper respondents are those having custody over the person detained.

Accordingly, out of an abundance of caution, Petitioners have named and oppose dismissal of the immediate custodian Respondents in addition to the supervisory officials who can provide them relief. Petitioners recognize the tension between urging application of the "extraterritorial exception" that allows both the President and the Secretary of Defense as proper respondents and seeking to retain the immediate custodians as Respondents, however, this is a result of the conflicting authorities. Only by naming all Respondents can Petitioners ensure that regardless of how the conflicting authorities are resolved, they can obtain relief.

---

future jurisdictional challenge to Petitioners' habeas petition and other claims for relief, Petitioners would consent to the dismissal of the Commanders of Joint Task Force-GTMO and of the Joint Detention Operations Group as named Respondents. If Petitioners were to consent to dismissal of those Respondents on this basis and the Government later raised a jurisdictional challenge to Petitioners' requested relief on the basis that the proper respondent was not named, Petitioners should be permitted to amend their petition to include that official.

## II.     The President Is A Proper Respondent

Even if the immediate custodian rule applies in this case,[3] the unique situation of Petitioners and other Guantánamo detainees suggests that the President should remain a named Respondent. If the President is dismissed, then the Government can evade this Court's authority simply by transferring the detainees from the custody of the Department of Defense (DoD) to the Central Intelligence Agency (CIA), to the Department of Justice (DoJ), or to other agencies unknown to Petitioners. A number of detainees were previously transferred from CIA custody to DoD and are currently detained at Guantánamo. At least one terrorism suspect was transferred from the DoJ to DoD when the Government found it convenient to do so. *See Al-Marri* v. *Pucciarelli*, ___ F.3d ___, 2008 W.L. 2736787, at *3–4 (4th Cir. July 15, 2008) (en banc) (noting Government's dismissal of indictment during criminal proceedings against defendant and order signed by President transferring defendant to military custody). And at least one terrorism suspect was transferred from DoD to DoJ, also at the Government's convenience, and to the great consternation of one federal Court of Appeals. *See Padilla* v. *Hanft*, 432 F.3d 582 (4th Cir. 2005) (denying Government's motion to transfer military detainee to civilian authorities for trial, after Court had previously given Government authority to hold the detainee in military custody), *rev'd*, 546 U.S. 1084 (2006). Additionally, the Government takes the position that it has the unfettered discretion to transfer detainees from Defense Department control. *See* Government's Brief Regarding Procedural Framework Issues at pp. 43–46. Accordingly, inter-agency transfer in these cases is a real concern.

This is not to say that Petitioners have named the President as their *future* custodian; the President is very much the current custodian and therefore is properly named as a Respondent.

---

[3] If the habeas cases of Guantanamo detainees are governed by an exception to the immediate custodian rule as argued by the Government, nothing would prohibit properly naming the President as a Respondent in this case as the ultimate supervisory official. *See supra*, note 1.

5

Indeed, the Government claims that the Executive's authority to detain Petitioners in this case arises from two sources: the President's Article II powers, and the President's authority to "use all necessary and appropriate force" under the AUMF, 115 Stat. 224 (2001). Prior to filing this Motion to Dismiss, the Government made no mention of the Secretary of Defense as the exclusive source of custodial authority over Petitioners.

In justifying its attempt to dismiss the President, the Government relies chiefly on an 1867 case for the proposition that courts have "no jurisdiction . . . to enjoin the President in the performance of his official duties." Gov't Mot. at 2 (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 498–99 (1867)). The Court of Appeals for the District of Columbia Circuit, however, has twice interpreted *Mississippi v. Johnson* much more narrowly than the reading suggested in the Government's motion. In *National Treasury Employees Union v. Nixon*, 492 F.2d 587, 614 (D.C. Cir. 1974), the Court of Appeals observed that *Mississippi v. Johnson* actually turned on a finding that the case presented a nonjusticiable political question. The Court in *National Treasury* held that *Mississippi v. Johnson* did not bar a Court from issuing a writ of mandamus to the President to effectuate a pay raise owed to certain federal employees (although the Court did not formally issue the writ). And in *Nixon v. Sirica*, 487 F.2d 700, 712 n.53 (D.C. Cir. 1973), the Court read *Mississippi v. Johnson* to mean merely that the President could not be enjoined to "coerce a discretionary, as opposed to ministerial, act of the Executive."

The second case cited by the Government, *Franklin v. Massachusetts*, 505 U.S. 788 (1992), merely questioned the judiciary's authority to issue an injunction against the President, without deciding the question. *See id.* at 802–03. More recent authority makes clear that the President "is subject to judicial process in appropriate circumstances." *Clinton* v. *Jones*, 520 U.S. 681, 703 (1997). As the Supreme Court explained in *Clinton* v. *Jones*,

6

> Although Thomas Jefferson apparently thought otherwise, Chief Justice Marshall, when presiding in the treason trial of Aaron Burr, ruled that a subpoena *duces tecum* could be directed to the President. *United States v. Burr*, 25 F. Cas. 30 (No. 14,692d) (C.C.Va. 1807). We unequivocally and emphatically endorsed Marshall's position when we held that President Nixon was obligated to comply with a subpoena commanding him to produce certain tape recordings of his conversations with his aides.

520 U.S. at 703–04 (footnote omitted); *see also United States v. Nixon*, 418 U.S. 683 (1974). The Supreme Court also observed that "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Id*. at 704.[4]

It may well be that this Court has no power to enforce certain orders directed to the President. But the order itself has significance and this Court has the power to issue such orders. In *Ex parte Merryman*, 17 F. Cas. 144 (C.C. Md. 1861), Chief Justice Taney, sitting as Circuit Justice in the District of Maryland, issued a writ of habeas corpus to consider the petition of a Baltimore County farmer held by the military at Ft. McHenry, in Baltimore City. The officer in charge of the military prison refused to honor the writ on the ground that President Lincoln had given him the authority to suspend habeas corpus. Chief Justice Taney held that the president had no authority to suspend habeas. He directed the clerk "to transmit a copy [of the opinion], under seal, to the president of the United States. It will then remain for that high officer, in fulfillment of his constitutional obligation to 'take care that the laws be faithfully executed,' to

---

[4] The Court in *al-Marri* v. *Rumsfeld*, 360 F.3d 707 (7th Cir. 2004), cited *Franklin* as authority to remove the President from the caption of a habeas petition pending on appeal. The *al-Marri* decision is not binding on this Court, of course, and Petitioners contends it misread *Franklin* and neglects the other authorities cited in the text. In *al-Marri*, moreover, the petitioner named the President and the Secretary of Defense in order to acquire jurisdiction in a district court outside his place of incarceration, so the Court needed to resolve the identity of the proper respondents in order to determine the cognizability of the petition in a particular district. In this case, the Government concedes that this Court is the proper forum for this petition.

7

determine what measures he will take to cause the civil process of the United States to be respected and enforced." *Id.* at 153. Petitioners in this case can ask no more, but they should not be required to ask for less.

## CONCLUSION

For these reasons, Petitioners respectfully request that the Court deny the Government's Motion to Dismiss Improper Respondents.

Dated: August 26, 2008

                                                     Respectfully submitted,

                                                     By: __/s_____

CLIFFORD CHANCE US LLP

    Julia Symon (Bar No. 456828)
    2001 K Street NW
    Washington, DC 20006
    Tel:     (202) 912-5000
    Fax:    (202) 912-6000
    e-mail: julia.symon@cliffordchance.com

    James Hosking
    Hanna Madbak
    31 West 52nd Street
    New York, NY 10019
    Tel:     (212) 878-8000
    Fax:    (212) 878-8375
    e-mail: james.hosking@cliffordchance.com

*Counsel for Petitioners*

NYA902734.2