UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOATH HAMZA AHMED AL ALWI, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Case No. 05-2223 (RJL) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM ORDER
(December 30, 2008)

Petitioner Moath Hamza Amhed Al Alwi ("petitioner") is a detainee being held at the U.S. Naval Base at Guantanamo Bay, Cuba. He alleges that he is being unlawfully detained by Respondents President George W. Bush, Secretary of Defense Robert M. Gates,[1] Army Brigade General Jay Hood, and Army Colonel Mike Bumgarner (collectively "respondents" or the "Government"). On December 16, 2008, this Court commenced habeas corpus hearings for petitioner Al Alwi. That morning, counsel for both parties made unclassified opening statements in a public hearing. Petitioner Al Alwi listened to a live translation of the opening statements via a telephone transmission to Guantanamo Bay, Cuba.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), if a public officer named as a party to an action in his official capacity ceases to hold office, the court will automatically substitute that officer's successor. Accordingly, the Court substitutes Robert M. Gates for Donald H. Rumsfeld.

Thereafter, the Court went into a closed-door session to hear each side present an opening statement that included relevant classified information. Upon completion of those statements, each side presented its evidence and arguments regarding various material issues of fact in dispute between the parties. That presentation was completed in the early evening of December 16, 2008 and petitioner Al Alwi decided thereafter not to testify on his own behalf. The next morning the Court reconvened to hear the closing arguments of the parties. At the end of those arguments, the Court informed the parties that it would hold a public hearing today to announce its decision. A classified version of this opinion setting forth in greater detail the Court's reasoning will be distributed through the Court Security Office next week, together with the final judgment.

Before stating the Court's ruling, a brief statement of the relevant factual and procedural background of this case is appropriate.

## BACKGROUND

Petitioner Al Alwi, a Yemen citizen, is alleged to have traveled sometime in or around 2000 from Saudi Arabia to Afghanistan to fight with the Taliban against the Northern Alliance. (Unclassified Return ¶¶ 1, 20, 22 [Dkt. #79-2].) He was picked up in Pakistan in late 2001 by Pakistani authorities and was shortly thereafter given over to U.S. custody and transferred to Guantanamo Bay, Cuba, where he has remained since his arrival. (Pet'r Opening Statement, Unclassified Hr'g Tr. at 11:5-14, Dec. 16, 2008.)

In the aftermath of the Supreme Court's decision in *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (holding that 28 U.S.C. § 2241 extended statutory habeas corpus jurisdiction

to Guantanamo), petitioner Al Alwi filed his habeas corpus petition with this Court on November 15, 2005. (Pet. for Writs of Habeas Corpus [Dkt. #1].) As with hundreds of other petitions filed around that time, no action was taken by this Court on the petition until the Supreme Court finally ruled on June 12, 2008 in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), that Guantanamo detainees are "entitled to the privilege of habeas corpus to challenge the legality of their detention." *Id.* at 2262.

In the month following the *Boumediene* decision, this Court met with counsel in petitioner Al Alwi's case on two occasions to discuss issues unique to the case and procedural issues attendant to the habeas process. On July 30, 2008, the Court ordered respondents to file their Factual Return for petitioner Al Alwi by September 23, 2008. (Briefing and Scheduling Order, July 30, 2008 [Dkt. #41].) On September 9, 2008, respondents sought a thirty-day extension for the production of the Al Alwi Factual Return. (Mot. for Partial Relief [Dkt. #61].) The Court granted respondents' motion on September 23, 2008 and set October 21 for the filing of the Factual Return. (Order, Sept. 23, 2008 [Dkt. #63].) Respondents complied with that order.

On October 23, 2008, the Court met with counsel to discuss any issues raised after reviewing respondents' Factual Return. On October 31, 2008, the Court issued its Case Management Order ("CMO") for the case. (Case Management Order [Dkt. #76].) That order was essentially a duplicate of the earlier CMO issued by the Court in the *Boumediene v. Bush* case, No. 04-cv-1166, on August 27, 2008.

On November 5, 2008, the Government filed an unclassified version of the Factual Return. (Notice of Filing of Unclassified Return [Dkt. #79].) Approximately three weeks later, on November 24, 2008, petitioner Al Alwi's counsel filed a motion for leave to take discovery, seeking 32 separate document productions and 13 interrogatories. (Notice of Filing of Mot. for Leave to Conduct Discovery [Dkt. #83].) The Court held a discovery hearing on December 1, 2008 and granted some of the discovery requests.

On December 5, 2008, petitioner Al Alwi's counsel filed his Initial Traverse, setting forth the factual basis for his opposition to the Government's Factual Return. (Notice of Filing of Classified Traverse [Dkt. #91].) Seven days later, petitioner Al Alwi moved to amend his Traverse, which the Court granted. (Mot. for Leave to File Amended Traverse, Dec. 12, 2008 [Dkt. #93].) Three days thereafter, on December 15, 2008, petitioner Al Alwi moved to submit a supplemental declaration to his Traverse, which the Court also granted. (Mot. for Leave to File Suppl. Decl. [Dkt. #98].) That same day the Court held a pre-hearing conference with counsel to identify the material issues of fact in dispute between the parties and to discuss any legal or procedural issues that needed to be resolved before the habeas hearing commenced. Based on a careful review of the Factual Return and Traverse, and after a day and a half of hearings on the factual issues in dispute and the arguments of counsel, the following is the Court's ruling on petitioner Al Alwi's petition.

## LEGAL STANDARD

Under the CMO, the Government bears the burden of proving "by a preponderance of the evidence, the lawfulness of the petitioner's detention." (CMO ¶ II.A.) The Government argues that petitioner Al Alwi is lawfully detained because he is an "enemy combatant," who can be held pursuant to the Authorization for Use of Military Force and the President's powers as Commander in Chief.[2] (Unclassified Return ¶¶ 2-3; Govt's Legal Basis for Detention of Pet'r Al Alwi, filed through the CSO on Dec. 3, 2008 (notice of filing at [Dkt. #88]).) The following definition of "enemy combatant," previously adopted by this Court in the *Boumediene* cases, governs the proceedings in this case:

> An "enemy combatant" is an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces.

*Boumediene v. Bush*, 2008 WL 4722127, at *2 (D.D.C. Oct. 27, 2008). Accordingly, the question before this Court is whether the Government has shown by a preponderance of

---

[2] In response to the September 11th terrorist attacks, Congress passed a joint resolution authorizing the President to

> use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Authorization for Use of Military Force, Pub. L. No. 107-40, §§ 1-2, 115 Stat. 224 (Sept. 18, 2001).

the evidence that petitioner Al Alwi is being lawfully detained—*i.e.*, that he is an "enemy combatant" under the definition adopted by this Court.

## ANALYSIS

The Government contends that petitioner Al Alwi is an enemy combatant under the definition established by this Court because he "was part of or supporting Taliban or al Qaeda forces." (*See* Unclassified Return ¶¶ 1-3; Govt's Mem. Regarding the Definition of Enemy Combatant at 3 [Dkt. #94].) In particular, the Government contends that petitioner Al Alwi stayed at guesthouses closely associated with the Taliban and al Qaeda and, at one of them, surrendered his passport to a person at the guesthouse. (Unclassified Return ¶¶ 24-27.) In addition, the Government contends that petitioner Al Alwi received military training at two separate camps closely associated with al Qaeda and the Taliban and supported Taliban fighting forces on two different fronts in the Taliban's war against the Northern Alliance.[3] (*Id.* ¶¶ 29-32, 35-41.) And rather than leave his Taliban unit in the aftermath of September 11, 2001, the Government alleges that petitioner Al Alwi stayed with it until after the United States initiated Operation Enduring Freedom on October 7, 2001; fleeing to Khowst and then to Pakistan only after his unit was subjected to two-to-three U.S. bombing runs. (*See* Unclassified Return ¶ 41; Unclassified Return Ex. ISN 028 FD-302 (April 14, 2003).) Finally, the Government

---

[3] The Government also contends that petitioner Al Alwi is an enemy combatant because he "directly supported hostilities in aid of enemy armed forces" by fighting on behalf of the Taliban. (Govt's Mem. Regarding the Definition of Enemy Combatant at 3 [Dkt. #94].)

also contends that petitioner Al Alwi served as a bodyguard to Usama Bin Laden. (Unclassified Return ¶¶ 49-50.)

Petitioner, not surprisingly, disagrees. He contends that he had no association with al Qaeda and his support for and association with the Taliban was minimal and not directed at U.S. or coalition forces. (Pet'r Opening Statement, Unclassified Hr'g Tr. at 10:12-22, 11:21-25, 12:1-2.) Petitioner also denies ever being a bodyguard for Usama Bin Laden. (*Id.* at 11:17-22.) For the following reasons, the Court concludes that the Government has met its burden under the Case Management Order and will DENY petitioner Al Alwi's petition for a writ of habeas corpus.

The Government's evidence is a combination of certain statements of the petitioner which the Court found credible, and certain supporting classified documents that establish in greater detail the most likely explanation for, and significance of, petitioner's conduct. Due to the unclassified nature of this proceeding, however, the Court is limited to the following description of the factual basis of the Government's case.

First, with respect to staying at certain guesthouses in Pakistan and Afghanistan, the Government was able to establish by a preponderance of the evidence that these guesthouses, where petitioner Al Alwi admits staying, were closely associated with the Taliban and, in at least one instance, al Qaeda. In addition, the Government established by a preponderance of the evidence that petitioner Al Alwi voluntarily surrendered his passport upon arriving at a particular guesthouse closely associated with al Qaeda in

Kandahar, Afghanistan; a practice common at al Qaeda guesthouses. Second, with respect to military training and support for fighting forces, again in large part based on petitioner's own admissions which the Court found credible, the Government established by a preponderance of the evidence that petitioner received such training at one particular Taliban-related camp and thereafter traveled to two different fronts over the following year to support Taliban fighting forces. And finally, the Government established by a preponderance of the evidence, based on petitioner Al Alwi's own statements, that petitioner remained with his Taliban unit well after September 11, 2001, not leaving until after two-to-three U.S. bombing runs.

Although there is no evidence of petitioner actually using arms against U.S. or coalition forces, the Government does *not* need to prove such facts in order for petitioner to be classified as an enemy combatant under the definition adopted by the Court. Petitioner Al Alwi's close ties to Taliban and al Qaeda forces during the year preceding the initiation of force by the United States in October 2001, combined with the fact that he remained with his Taliban unit after hostilities were initiated by the United States and its allies, is more than enough to meet the definitional requirement.

Finally, the Court would note that in light of the more than ample evidence provided by the Government to meet its burden, there is no need for the Court to address the issue of whether petitioner Al Alwi ever served as a bodyguard to Usama Bin Laden or whether petitioner also received military training at the al-Farouq camp, which the government alleges was closely associated with al Qaeda. (Unclassified Return ¶ 41.)

The Government relies principally on a number of other Guantanamo detainees' statements to support these allegations and assessing their reliability under these circumstances is, for obvious reasons, a delicate task. Such assessments should only be undertaken when the Court has no other choice. In this case it is not necessary to do so because of the considerable weight of the Government's other evidence.

Thus, based on the evidence presented by the Government and all reasonable inferences drawn therefrom, the Court concludes that petitioner Al Alwi is being lawfully detained as an enemy combatant because it is more probable than not that he was "part of or supporting Taliban or al Qaeda forces" both prior to and after the initiation of U.S. hostilities in October 2001. Accordingly, the Court must, and will, DENY petitioner Al Alwi's petition for a writ of habeas corpus and will *not* order his release.

## CONCLUSION

For all the foregoing reasons, and for the reasons in the forthcoming classified version of this opinion, it is hereby

**ORDERED** that Petitioner Moath Hamza Amhed Al Alwi's petition for a writ of habeas corpus is **DENIED**.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge