```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA


YOUSUF AL KARANY,                  :  Docket No. CV05-429 (RJL)
                                   :
            Petitioner,            :  December 17, 2008
                                   :
                                   :  11:45 a.m.
v.                                 :
                                   :
GEORGE W. BUSH, ET AL.,            :
                                   :
                                   :
            Respondents.           :
. . . . . . . . . . . . . . . . . .:


              TRANSCRIPT OF OPEN HABEAS HEARING
            BEFORE THE HONORABLE RICHARD J. LEON
                UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

For the Petitioner:        CLIVE A. STAFFORD SMITH, ESQ.
                           636 Baronne Street
                           New Orleans, Louisiana   70113

                           ZACHARY KATZNELSON, ESQ.
                           CORI CRIDER, ESQ.
                           Reprieve
                           22 Tudor Street
                           London, UK   EC4Y 0AY


For the Respondents:       JAMES ROSS SMART, ESQ.
                           ERIK ABLIN, ESQ.
                           PHILLIP MICHAEL TRUMAN, ESQ.
                           NICHOLAS OLDHAM, ESQ.
                           U.S. Department of Justice
                           20 Massachusetts Avenue, N.W.
                           Washington, D.C.   20530

PDF created with pdfFactory trial version www.pdffactory.com

```
Court Reporter:            PATTY ARTRIP GELS, RMR
                           Official Court Reporter
                           Room 4700-A U.S. Courthouse
                           Washington, D.C.  20001
                           (202) 962-0200
```

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

PDF created with pdfFactory trial version www.pdffactory.com

```
 1                    P R O C E E D I N G S
 2              COURTROOM DEPUTY:  Calling civil case 05-429, Yousuf Al
 3    Karany versus George W. Bush, et al.
 4              Would counsel please come forward and identify yourself
 5    for the record.
 6              MR. STAFFORD SMITH:  Good morning, your Honor.  I am
 7    Clive Stafford Smith on behalf of Mr. Al Karany, along with
 8    Zachary Katznelson and Cori Crider.
 9              THE COURT:  Welcome.
10              MR. SMART:  Good morning, your Honor.  James Smart from
11    the Department of Justice.  And with me at counsel table is Erik
12    Ablin, Nicholas Oldham and Mike Truman.  Also on litigation
13    support is Tom Coucher.
14              THE COURT:  Very good.  Welcome back.  All right.  I
15    believe the necessary connections have been made by telephone to
16    Guantanamo, and our detainee in this specific instance is
17    listening in.
18              First of all, welcome, everyone.  This is the beginning
19    of the hearing that got rolling, so to speak, when the
20    classified factual return was filed on October 21st, 2008, by
21    the Government in this case.  An in-chambers conference was held
22    on October 24 with counsel to discuss whatever issues they
23    thought might need to be resolved by the Court.  An unclassified
24    version of the return was filed on November 6th, 2008, by the
25    Government.  And on November 25th, 2008, the detainee's counsel
```

PDF created with pdfFactory trial version www.pdffactory.com

1    filed a request for discovery in a discovery Motion, making 62
2    different requests for discovery of the Court.
3            The Court held a hearing on Monday, December 1st to
4    resolve those issues, and the initial traverse covering the
5    factual allegations and disputes between the parties was filed
6    on Friday, December 5th, 2008.  A number of status conferences
7    were held in the days after that between the Court and the
8    parties, and the traverse was supplemented on December 12th,
9    2008, the same day the Court held a pre-hearing conference for
10   this hearing here today.
11           I would be remiss if I did not acknowledge and thank
12   the parties for their hard work under relatively short deadlines
13   that were set because of this Court's belief and commitment that
14   these hearings, to be true to the Supreme Court's ruling, were
15   to be held as soon as possible and, in my judgment, that
16   included prior to the completion of this administration.
17           So to get these hearings and the hearings of the other
18   detainees assigned to me done, these are the timetables that the
19   Court believes were necessary.  And I might add, based on the
20   quality of the pleadings and the documents that have been filed,
21   which I have had the pleasure of reviewing, the parties have
22   done an exhaustive job on behalf of their respective sides.  So
23   I compliment them for that at this time.
24           So what we are going to do now, of course, is hear the
25   unclassified opening arguments for both sides.  We estimate

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   those will be around 15 minutes each because, of course, the
 2   parties are not at liberty to discuss the evidence in the case
 3   which is -- essentially is all classified information.
 4           Then we will go into executive session to go over the
 5   classified evidence in the case, and the Government, of course,
 6   has the burden of proof and will be presenting its case.  And
 7   detainee's counsel, as they go along, will be presenting their
 8   opposition to any factual issues that are material that are in
 9   dispute in the case.
10           When that is over, we will have closing arguments from
11   both sides.  Unfortunately, because the closing arguments will
12   essentially be made up of discussion of classified information,
13   those too will have to be in a closed session.  The Court
14   expects to announce its decision within two weeks, either the
15   29th or the 30th of this month.
16           So it's the Court's belief that since the Petitioner is
17   the moving party, the Petitioner goes first as to this opening,
18   and then, when we get to the classified, since the burden of
19   proof is on the Government, they go first in that opening.  So
20   we will hear from the Petitioner first.
21           THE SERGEANT:  Excuse me, your Honor.
22           THE COURT:  Hello.
23           COURTROOM DEPUTY:  Sergeant, what is it?
24           THE SERGEANT:  This is Guantanamo.  We can't hear you.
25   It is coming in garbled.  And we don't hear an interpreter.
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1              THE COURT:  So you didn't hear anything I said, sir?
 2              THE SERGEANT:  It is coming in broken up, and we don't
 3   hear an interpretation for the detainee.
 4              THE COURT:  Well, the reason why there isn't an
 5   interpreter for the detainee, of course, is because he speaks
 6   sufficiently good English, in the judgment of his counsel, that
 7   it wasn't necessary to have an interpreter either here or down
 8   in Guantanamo.  So at this point it seems to me -- we have a
 9   transcript of my introductory remarks which were obviously brief
10   and factual in nature --
11              THE SERGEANT:  That's fine.  One of his attorneys is
12   here, and he says that's fine.
13              THE COURT:  Okay.  So we will arrange for him to have a
14   transcript of my opening remarks, but I would ask the Sergeant,
15   if you are having trouble hearing counsel who are about to
16   speak, I want you to let us know immediately.  Speak up, and we
17   will take the necessary steps to make sure that this
18   transmission is working appropriately under the circumstances.
19   Okay?
20              THE SERGEANT:  Yes, sir.  You are coming in broken up,
21   but we heard most of what you said, yes, sir.
22              THE COURT:  All right.  I guess he heard most of what I
23   said, but I want him to be able to hear all of what his counsel
24   says and I want him to hear all of what the Government says.  So
25   if this starts breaking up to the point where he can't hear it
```

```
 1   or understand it, I want you to let us know immediately.  Okay?
 2             THE SERGEANT:  Yes, sir.
 3             THE COURT:  Thank you.
 4             THE SERGEANT:  We can hear the attorney, but we can't
 5   hear you.  You are coming in broken up.
 6             THE COURT:  Well, I will tell you what.  We are going
 7   to start with detainee's counsel right now and we will see how
 8   that goes.
 9             THE SERGEANT:  Yes, sir.
10             MR. STAFFORD SMITH:  Thank you, your Honor.  May it
11   please the Court.  I'm Clive Stafford Smith.  It is a great
12   privilege to be here today.  I do apologize for not being here
13   before.  My wife has been very sick.
14             THE COURT:  I understand completely.
15             MR. STAFFORD SMITH:  But she ordered me to come today,
16   so there you have it.
17             And I view it as a very good sign, your Honor, that you
18   are wearing a tie in the colors of the English cricket team.  I
19   sincerely hope that that --
20             THE COURT:  I also would note that's fortuitous.
21             MR. STAFFORD SMITH:  Well, that's one of my great
22   sports.  Perhaps we will go up and have a quick game later.
23             I will be very brief, your Honor.  Let me just start
24   have off with, I think, a crucial issue, which is, who is
25   Mohammed Al Karany?  It has been my privilege to represent him
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   now for three years.  And this is a kid -- and he is a kid who
 2   had the misfortune to grow up African in Saudi Arabia.  And I
 3   have spent most of my career litigating in the deep south, and I
 4   have got to say we, as Americans, have made tremendous strides
 5   that haven't been made in Saudi Arabia in race relations.  And I
 6   think that explains an awful lot of what we are going to discuss
 7   over the next day.
 8            You know, on one level, in this unclassified
 9   introduction, we don't need to go any further than this.  This
10   was the 2008 ARB that was filed by our Respondent in this case.
11   And a conscientious member of the military down there in
12   Guantanamo added three things at the end of it.  Those three
13   things -- and these were Exhibit 16D -- said as following.
14   Quote:  It was reported that the information about the detainee
15   receiving special training at Al Farouq was not true.
16            Remember, these all come from people other than Mr. Al
17   Karany.
18            Second, quote, it was reported that the detainee is of
19   no value to the United States and does not know anything, end
20   quote.
21            A third person:  It was reported that the detainee has
22   nothing -- was nothing in al-Qaeda.  It was reported the
23   detainee lied about his background because the detainee was
24   afraid that, if he returned to Saudi Arabia, he would go to jail
25   there.  It was reported the detainee was afraid of his family's
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    neighbors and of causing problem for his family in Saudi Arabia.
 2              There, in a nutshell, you have an awful lot of what's
 3    really going on here, and I sincerely hope and believe that we
 4    will hear from Respondent as to who said those things because we
 5    have only had one of those identified to us to date, and it
 6    would obviously be crucial, in any system that believes in
 7    fairness, for the Court to be told where those other sources
 8    are, who they are and why those people said it and why,
 9    particularly, Respondent felt it important to include that in
10    the official ARB down there in Guantanamo.
11              Another aspect of this case, which is crucial, is
12    Mr. Al Karany's status as a juvenile.  So many things flow from
13    that.  And, you know -- and one thing -- the thing that struck
14    me about this case ever since I first got involved is in terms
15    of assessing the case against Mr. Al Karany, it truly is quite
16    astounding that, after six-and-a-half years of holding him in
17    Guantanamo Bay, Respondent didn't know how old he was.  I mean,
18    that's quite a commentary on the evidence that's been put
19    together down there.
20              Now we do know, and we've presented to the Government
21    and yourself the various evidence on that, and I will point out
22    in the unclassified materials that every single time there has
23    been an annotation of what Mr. Al Karany has said his birthday
24    was -- and there's three occasions -- every single time he has
25    told the Government the same thing, which is the 12th month of
```

PDF created with pdfFactory trial version www.pdffactory.com

 1    1407, which translates, of course, to making him 14 at the time
 2    that he was taken prisoner in Pakistan, not in Afghanistan.
 3            And there are many conclusions that flow from that,
 4    conclusions that I think perhaps everyone would rather avoid
 5    having to get to, which is the thorny issue of what would happen
 6    if someone really was an enemy combatant that was 14?  And I put
 7    it in this perspective -- this struck me, too, and I just
 8    thought it was interesting.  You know, Pope Benedict XVI was in
 9    the Hitler Youth when he was 15 years old.  And I don't think
10    there is anyone on this planet who is saying that one should
11    hold Pope Benedict XVI for what happened when he was 15.  And
12    you couldn't do that under international law or American law.
13            Now, of course, Mr. Al Karany wasn't in any Hitler
14    Youth, and he wasn't a member of al-Qaeda, but even if one
15    accepted the Government's case at face value and gave it credit
16    across the board, you would be faced with a situation like that.
17    And that would then raise all of these very thorny issues.
18            Fortunately, you are going to be saved from that
19    because we are not going to have to deal with whether he was a
20    juvenile enemy combatant because he wasn't an enemy combatant at
21    all.
22            What really happened?  We have laid it out, and I won't
23    bore the Court with going through what really happened, but
24    Mr. Al Karany left Saudi Arabia to learn English and to learn
25    computers.  And I think that, ultimately, the Court will

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   recognize that that was what it was all about.
 2              One other element that I will touch on -- I won't go
 3   into in any detail -- is the thorny issue, again, of the abuse
 4   that Mr. Al Karany has gone through.
 5              You know, there is a fascinating argument made by
 6   Respondent that the Manchester document from Manchester over
 7   near where I live, means that if anyone claims they have been
 8   abused, that's proof they are in al-Qaeda.
 9              In this particular case, we have an FBI investigation
10   that concluded he has been abused.  It was my privilege to be
11   there for that investigation in Guantanamo where these FBI
12   agents came and interviewed my client -- this is all
13   unclassified -- and it's now part of an FBI report where the
14   Government concluded that Mr. Al Karany had been sleep deprived,
15   had been put through the frequent flyer program, that he had
16   been put in shackles and short-shackled, left there until he
17   urinated on himself, and that he had been subjected to various
18   coercive interrogation methods.  This comes from the FBI, not
19   from my client, but it proves that my client is telling the
20   truth.
21              Again, that raises very thorny questions that, again, I
22   don't think the Court will have to reach about burdens of proof
23   on voluntariness of statements.  But, actually, again, we can
24   skirt that because of the real evidence.  And the real evidence
25   here -- I have tried a lot of cases in Mississippi, and I don't
```

PDF created with pdfFactory trial version www.pdffactory.com

1    think it would get very far in any court down there.  Trial by
2    newspaper would be a slightly generous approach to describing
3    some of the evidence because, as you know, the Government has
4    submitted two newspaper articles from al-Quds and al-Sharq that
5    they believe prove something.
6         Well, it was difficult for us to trace down a lot of
7    the evidence here because, as the Court says, it has been a
8    short time and an awful lot of ground to cover.  But as luck
9    would have it, those newspapers were published in London, and
10   that made our job a little bit easier.  And the Court will have
11   seen our exhibits of an affidavit from the chap who published
12   the al-Sharq story on which the Government relies.  And he says
13   that he is horrified -- it makes me feel bad that someone might
14   be using it against Mr. Al Karany in this way because he didn't
15   mention anything about Mr. Al Karany in that article.  He had no
16   idea about who Mr. Al Karany was.
17        Now, interestingly enough, he told us that he did
18   indeed later learn who Mr. Al Karany was, and he published an
19   article in Arabic about Mr. Al Karany himself.  And he describes
20   it in this affidavit.  And it's exactly consistent with
21   everything that Mr. Al Karany has laid out as his case before
22   this Court.
23        So the Government, which would have this Court rely on
24   a newspaper article in Arabic written 3,000 miles away from what
25   was going on, actually should -- has pointed us to some evidence

1    that shows that Mr. Al Karany was telling the truth.
2            In summary -- and I, you know, will keep this very
3    short -- we have to think about the balance of equities when we
4    consider this evidence, and we have to think about a child, a
5    juvenile, who the Government would like to hold in perpetuity,
6    effectively, in Guantanamo Bay.  That's one side of it.
7            And the other side is this individual who has one life
8    who -- should have been in school for the last six years, not in
9    Guantanamo Bay.  And I think that puts in good perspective the
10   way we consider the evidence over the next few hours.  And I
11   have said enough briefly.
12           Thank you very much, your Honor.
13           THE COURT:  Thank you, Mr. Smith.
14           Mr. Smart.
15           MR. SMART:  Thank you, your Honor.  May it please the
16   Court, I will also be brief.  The Court, your Honor, is here
17   today because in the months leading up to and following
18   September 11th, 2001, Petitioner pursued militant Jihad with
19   al-Qaeda.  That path extended from Petitioner's obtaining a
20   false passport to conceal his identity as he traveled the world
21   on his Jihadi path, through deepening ties to and support of
22   al-Qaeda, including attendance at an al-Qaeda training camp in
23   Afghanistan and participation in the hostilities at Tora Bora.
24           Fortunately, United States forces were able to detain
25   the Petitioner, negating his threat to U.S. and allied forces

PDF created with pdfFactory trial version www.pdffactory.com

1  and civilians.

2        The terrible morning of September 11th, 2001, brought
3  the single worst attack on American soil.  September 11th
4  plunged the United States into a full-fledged war against
5  terror.  We were required to take the offensive to protect the
6  lives of our citizens, our democratic values and our way of
7  life.

8        Although September 11th brought home the threat posed
9  by al-Qaeda to millions of Americans who knew little or nothing
10 about it until that time, that threat had, in fact, arisen years
11 before.  The terrorist organization had been founded by Osama
12 bin Laden in the late 1980s.  In 1996, Osama bin Laden issued a
13 public declaration of war against the United States calling for
14 the murder of American military personnel serving on the Arabian
15 peninsula.  And in February 1998 bin Laden issued a fatwa, or a
16 purported religious ruling, calling for all Muslims able to do
17 so to kill Americans, whether military or civilian, whenever and
18 wherever possible.  His followers took up that calling well
19 before September 11th, repeatedly attacking American interests
20 throughout the world.

21       The United States Government and its citizens decided
22 swiftly and decisively after the September 11th attack.  The
23 response necessarily has two central goals:  First, the
24 prevention of, not just reaction to, future terrorist attacks;
25 second, the eradication of terrorists and those that harbor

Case 1:05-cv-02223-RJL   Document 110   Filed 01/05/09   Page 15 of 19
15

```
 1    them.  This is exactly what Congress authorized and directed the
 2    President to do on September 18, 2001, when it passed the
 3    authorization to use military force.  By necessity, that
 4    authorization included the authority to detain the enemy
 5    wherever they are found while hostilities continue.
 6             Our enemy is unlike the organized enemies that the --
 7    and armies that the United States has primarily faced in its
 8    history.  The enemy recruits networks of combatants who wear no
 9    uniforms, carry no identity cards.  They are trained to -- not
10    only to master military skills and the tools of terror, but also
11    to exercise good trade craft to conceal their true identities
12    and motives.
13             These enemy combatants traveled from country to country
14    with ease, often under false travel documents, and they utilize
15    well-rehearsed cover stories to blend into communities wherever
16    they exist and to hide their true activities if they are
17    captured.
18             The Petitioner in this case claims that his
19    international travels were simply in pursuit of educational and
20    vocational advancement.  Petitioner asserts improbably that
21    despite admittedly obtaining a passport under a false name with
22    a date of birth that reflected majority status, he was allegedly
23    approximately 14 years old at the time he was detained.  He
24    makes sensationalistic claims regarding his treatment while in
25    detention, and he speculates that he was detained for no reason
```

1    other than the incentive on the part of his Pakistani captors to
2    obtain a bounty.  As these proceedings will show, however, these
3    claims are unsubstantiated.
4         Moreover, they have no bearing on whether the
5    Petitioner is an enemy combatant against the United States.
6    Under the law, it will be appropriate to hold the Petitioner as
7    an enemy combatant even if he were a juvenile which, I repeat,
8    these proceedings will show there is no basis to conclude that
9    he was a juvenile.
10        His sensationalistic claims regarding his treatment
11   while in detention have no bearing on the question before this
12   Court as to whether he, based on the evidence put forth before
13   the Court, was an enemy combatant.  And the question of the
14   incentive on the part of his Pakistani captors is not materially
15   before this Court because there is no probable cause
16   determination in this proceeding.  This is not a criminal case.
17        The Court must not be distracted by what is immaterial.
18   What matters is that the United States has multiple sources of
19   reliable information, credible intelligence, that Petitioner,
20   far from seeking innocent educational opportunities and
21   vocational advancement, instead pursued terrorist training and
22   was a foot soldier in the forces of al-Qaeda.  The United States
23   was, therefore, certainly entitled to detain the Petitioner on a
24   nonpunitive basis and to remove his threat for the duration of
25   hostilities.

PDF created with pdfFactory trial version www.pdffactory.com

1        My discussion now is on the public record.  And the
2   evidence in this case, as your Honor has mentioned, is primarily
3   classified.  As a result, I cannot talk further about the
4   evidence here.
5        I close, then, by simply and respectfully submitting
6   that the evidence in this matter establishes beyond a
7   preponderance that the Petitioner attended an al-Qaeda training
8   camp, participated in hostilities at Tora Bora, and was
9   otherwise a part of or a supporter of al-Qaeda, committed
10  belligerent acts, and directly supported hostilities in aid of
11  enemy forces.  Therefore, under the standards established by
12  this Court, the Petitioner is lawfully detained as an enemy
13  combatant by the United States.
14            THE COURT:  Thank you, Mr. Smart.
15            All right.  We are going to take a brief recess to
16  secure the room so that we can proceed with the classified
17  components of this hearing.  Based on yesterday's experience
18  with the other case, we will probably use up the remainder of
19  the day, and maybe even into the early evening -- I think we
20  went until 8:15 last night -- and then tomorrow morning we will
21  do the closing arguments in this case.  And then we will start
22  the next case sometime tomorrow morning, late in the day.
23            So the next time we will have a public hearing,
24  probably, regarding this case will be in around two weeks when I
25  announce my decision.  So we will take a brief recess to get the

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   room set up and to close off our telephone call with Guantanamo.
 2   We will stand in recess.
 3
 4            (Recess.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1                    CERTIFICATE OF REPORTER
 2
 3
 4          I, Patty A. Gels, certify that the foregoing is a
 5   correct transcript from the record of proceedings in the
 6   above-entitled matter.
 7
 8
 9
10                                 _____
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

PDF created with pdfFactory trial version www.pdffactory.com