**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MOATH HAMZA AHMED AL ALWI,** | ) | |
| | ) | |
| | ) | **Civil Action No.  1:05-CV-02223(RJL)** |
| **Petitioner,** | ) | |
| **v.** | ) | |
| | ) | |
| **GEORGE W. BUSH, President of the United** | ) | |
| **States,** *et al.*, | ) | |
| **Respondents.** | ) | |
| | ) | |

## PETITIONER AL ALWI'S MOTION FOR RECONSIDERATION

Petitioner, Moath Hamza Ahmed Al Alwi, hereby moves for reconsideration or to alter or amend the Court's Final Judgment dated January 9, 2009, pursuant to Federal Rule of Civil Procedure 59(e).

## PRELIMINARY STATEMENT

In denying Mr. Al Alwi's petition for habeas corpus, this Court ruled that he is being lawfully detained at Guantanamo Bay as an enemy combatant.  While Mr. Al Alwi disagrees with this ruling, he requests the Court reconsider its decision in light of the fact that, even if Mr. Al Alwi is properly considered an enemy combatant, the Government only has the authority to detain him until the cessation of hostilities in Afghanistan, which occurred no later than December 22, 2001, when the United States formally recognized and extended full diplomatic relations with the new government of the Islamic Republic of Afghanistan headed by Hamid Karzai.

## BACKGROUND

On January 9, 2009, this Court issued a Final Judgment denying Mr. Al Alwi's petition, the reasons for which are set forth in a public Memorandum Order dated December 30, 2008,

and a Classified Memorandum of Opinion dated January 9, 2009.  The Court held that Mr. Al

Alwi is being lawfully detained as an enemy combatant and, therefore, denied his petition for

habeas corpus.

## ARGUMENT

I. **The Petition Should Be Granted Because Major Hostilities Between the Taliban and the United States have ended.**

### A. The Authorization To Use Military Force

On September 11, 2001, nineteen terrorist aliens hijacked aircraft and carried out the

savage murders in New York, Virginia, and Pennsylvania that became infamous as "9/11."  The

United States quickly determined that the Al Qaeda terrorist organization was responsible for the

9/11 murders and concluded that this group had been given sanctuary in Afghanistan by its

government, the extremist Islamist group known as the Taliban.

Seven days later, Congress authorized the President "to use all necessary and appropriate

force against those nations, organizations, or persons" that "planned, authorized, committed or

aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations

or persons."  Authorization for Use of Military Force ("AUMF"), Pub. L. 107-40, 115 Stat. 224

(2001).

### B. The AUMF's Authority to Detain is Limited To the Duration of the Conflict

The traditional law-of-war rule is that a prisoner of war can be detained until the

"cessation of active hostilities."  Geneva Convention (III) Relative to the Treatment of Prisoners

of War art. 118, Aug. 12, 1949, 6 U.S.T. 3406, 75 U.N.T.S. 224 (Third Geneva Convention).

The Supreme Court in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), recognized this limitation when

it held that Congress granted authority in the AUMF "for the use of 'necessary and appropriate

force' to include the authority to detain for the duration of the relevant conflict."  542 U.S. at

WA418835.2

521.  While the Supreme Court did not ultimately reach the question of whether hostilities continued at the time,[1] the plurality held that:

> The United States may detain, for the duration of these hostilities, individuals legitimately determined to be Taliban combatants who "engaged in armed conflict against the United States."

*Id.*

### C.   Major Hostilities in Afghanistan Have Ceased and The United States is No Longer At War With The Government of Afghanistan.

On October 7, 2001, the U.S. began major combat operations by bombing Taliban and Al Qaeda strongholds in Afghanistan.[2]  Operation Enduring Freedom consisted primarily of U.S. airstrikes facilitated by small numbers of U.S. special operations forces and the Northern Alliance and Pashtun anti-Taliban forces.[3]  The Taliban was overthrown on December 9, 2001, when its forces surrendered Kandahar and Taliban Supreme leader Mullah Omar fled the city.[4]

On December 22, 2001, an interim government headed by Hamid Karzai and endorsed by the United States and the United Nations was formed.[5]

The United States long ago acknowledged the successful conclusion of the international armed conflict in Afghanistan authorized by the AUMF.  On or about January 29, 2002, the State Department determined that the Taliban had relinquished control over all territories in Afghanistan.[6]  On May 1, 2003, Donald H. Rumsfeld, the then Secretary of Defense of the United States of America, said: "[I]n regard to Afghanistan, [President] Bush, U.S. Central

---

[1]  *Hamdi*, 542 U.S. at 521 ("If the record establishes that United States troops are still involved in active combat in Afghanistan, those detentions are part of the exercise of "necessary and appropriate force," and therefore are authorized by the AUMF.).

[2]  Kenneth Katzman, Afghanistan: Current Issues and U.S. Policy, Congressional Research Service Report for Congress RL30588, Aug. 27, 2003 at 8.

[3]  Id.

[4]  Kenneth Katzman, Afghanistan: Post-War Governance, Security, and U.S. Policy, Congressional Research Service Report for Congress RL30588, Nov. 26, 2008, at 7.

[5]  Afghanistan Readies For A New Era, Dec. 22, 2001, http://archives.cnn.com/2001/WORLD/asiapcf/central/12/21/gen.afghan.gov/index.html; see also *United States v. Prosperi*, 573 F.Supp.2d 436, 455 (D. Mass. 2008).

[6]  Katzman, Afghanistan: Current Issues, supra note 2, at 38.

Command Chief Tommy Franks, and Afghan President Hamid Karzai 'have concluded we're at a point where we clearly have moved from major combat activity to a period of stability and stabilization and reconstruction activities."[7]

While it remains a dangerous and unstable place whose government, aided by NATO forces, continues to be subject to terrorist and insurgent attack, the Islamic Republic of Afghanistan is today a sovereign nation.  It is not the nation that gave harbor to the 9/11 murderers.  The new nation is an ally of the United States.  Its President has been welcomed to the White House.  Thus the international armed conflict that Congress authorized on September 18, 2001 -- between the United States and the "nations … [that] planned, authorized , committed or aided the terrorist attacks that occurred on September 11, 2001"[8] -- is long past.

Another federal district has determined, in the context of the Wartime Suspension of Limitations Act, that the war in Afghanistan has been over since the United States formally recognized and extended full diplomatic relations to the new government of Hamid Karzai on December 22, 2001.  *United States v. Prosperi*, 573 F.Supp.2d 436, 455 (D. Mass. 2008).  The court held that the recognition of the new government "signaled the cessation of a state of war with Afghanistan."  *Id.*  In reaching that conclusion, the court also noted that the U.S. and NATO armed forces that operate in Afghanistan today do so as a peacekeeping force established by international agreement, authorized by United Nations resolution and with the formal consent of President Karzai on behalf of the sovereign nation of Afghanistan.  *Id.* at n. 37.  In other words, the current mission is very different from the conflict initiated on October 7, 2001.

---

[7]   Rumsfeld: Major Combat Over in Afghanistan, May 1, 2003,
http://www.cnn.com/2003/WORLD/asiapcf/central/05/01/afghan.combat/; see also Katzman, Afghanistan: Current Issues, supra note 2, at 9.

[8]   See AUMF.

WA418835.2

Even assuming that Mr. Al Alwi is properly determined to be an "enemy combatant" who "engaged in armed conflict against the United States" (a point not conceded by Mr. Al Alwi), because the conflict authorized by the AUMF has ended, the Government no longer has the authority to detain Mr. Al Alwi.  Therefore, Mr. Al Alwi respectfully requests the Court to reconsider its judgment and grant his petition for habeas corpus.

WHEREFORE, Petitioner respectfully requests that this Honorable Court grant the Motion for Reconsideration and his petition for habeas corpus.

Dated: January 27, 2009

Respectfully submitted,

_____/s/_____
Julia C. Symon (DC Bar No. 456828)
CLIFFORD CHANCE US LLP
2001 K Street NW
Washington, DC 20006
Tel: (202) 912-5000
Fax: (202) 912-6000

James M. Hosking
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 878-8000
Fax: (212) 878-8375

*Counsel for Petitioner*

WA418835.2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MOATH HAMZA AHMED AL ALWI.,** | ) | |
| | ) | |
| | ) | **Civil Action No.  1:05-CV-02223(RJL)** |
| **Petitioner,** | ) | |
| **v.** | ) | |
| | ) | |
| **GEORGE W. BUSH, President of the United** | ) | |
| **States, *et al.*,** | ) | |
| **Respondents.** | ) | |
| | ) | |

### PROPOSED ORDER

Upon consideration of Petitioner's Motion for Reconsideration, it is

ORDERED that Petitioner, Moath Hamza Ahmed Al Alwi's petition for habeas corpus is

hereby granted.

IT IS SO ORDERED.


DATED: _____          _____

United States District Judge Richard Leon

WA418835.2